# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| ANCORA TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS INC. and LG ELECTRONICS U.S.A., INC., <br><br> Defendants. | CIVIL ACTION NO. 1:20-CV-00034-ADA <br><br> JURY TRIAL DEMANDED |
| ANCORA TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., and SAMSUNG ELECTRONICS AMERICA, INC., <br><br> Defendants. | CIVIL ACTION NO. 1:20-CV-00034-ADA <br><br> JURY TRIAL DEMANDED |

**PUBLIC VERSION**

**ANCORA'S MOTION TO EXCLUDE LG ELECTRONICS' EXPERT TESTIMONY OF ALAN RATLIFF RELYING ON NON-COMPARABLE SETTLEMENT AGREEMENTS**

Ancora files this motion to ask the Court to preclude LGE's damages expert, Mr. Alan Ratliff, from relying on three non-comparable settlement agreements to support his analysis.

First, the Court should preclude Mr. Ratliff from relying on a litigation settlement between LGE and third-party Alfred Levine (the "Levine Settlement"). Mr. Ratliff's use of the settlement agreement is methodologically unsound, as Mr. Ratliff relied on it only because **LGE told him** it ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ He had no role in setting the criteria LGE used to select what it claims is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and conducted no analysis of his own to confirm the soundness of LGE's selection methodology—which comprised a single LGE employee using his own subjective judgment ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Second, consistent with the Federal Circuit's "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages," *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 78 (Fed. Cir. 2012), the Levine Settlement also should be excluded because Mr. Ratliff has not done the work to demonstrate the agreement's comparability. His report includes no "analy[sis] [of] the . . . settlement and licensing negotiations in detail and with close attention to the similarities and differences between those negotiations and the hypothetical negotiation in [the] case." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1335 (Fed. Cir. 2015). Indeed, his entire "economic" comparability analysis is contained in a single paragraph that does not even offer a conclusory claim of economic comparability. Ex. 3 (Ratliff Rpt.) ¶ 58.

Third, Mr. Ratliff's report includes several descriptions of two other settlement agreements (one between Microsoft and Ancora, another between LGE and third-party Garnet Digital, LLC)

---

[1] All exhibits are appended to the March 31, 2021 Declaration of Steven M. Seigel. *See* Dkt. 193. All emphases added by Ancora unless otherwise stated.

1

that are indisputably non-comparable. *Id.* ¶¶ 14, 37-39, 53-54. They must be excluded. Presenting these irrelevant settlements at trial will be unduly prejudicial and unhelpful to the finder of fact.

**I.      BACKGROUND**

Mr. Ratliff's damages opinions are based on litigation settlements, ███████████████████████████████████████████████████████████████████████████████████████. His two theories are described below.

**A.      The "Apple Settlement" Theory (Mr. Ratliff's Upper Bound).**

███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**B.      The "LGE-Levine Settlement" Theory (Mr. Ratliff's Lower Bound).**

The second license that Dr. Ratliff relies on is the Levine Settlement, a ███ settlement that resolved litigation brought by third-party patent owner, Alfred Levine, against LGE. Mr. Levine asserted two patents—U.S. Patent Nos. 6,243,030 and 6,140,943—both of which are entitled "Electronic Wireless Navigation System." Ex. 7 (Levine Settlement) at 1. The devices

accused of infringement were "wireless navigation systems." *See* D.I. 38 (First Amd. Compl.), *Levine v. Samsung Telecomm. Am. LLC*, No. 09-cv-372 (E.D. Tex. Oct. 28, 2010).[2]



Significantly, Mr. Ratliff did not identify the Levine Settlement himself. To the contrary, per Mr. Ratliff, **LGE** hand-picked the Levine settlement, gave it to Mr. Ratliff, and stated that it was "representative" of LGE's licenses to comparable technology. *Id.* ¶ 52. Mr. Ratliff's entire description of this process is set forth below:

> LGE produced two patent agreements entered into by LGEKR with non-practicing patent licensors related to technology used with smartphones that LGE's designated representative, ▮▮▮▮▮▮▮▮▮▮▮▮ determined were similar to the '941 patent and the closest technologies to the '941 patent for which LGE has taken patent licenses. Both of these agreements were also in 2012, the same year as the hypothetical negotiation.

*Id.* In other words, Mr. Ratliff used this agreement not because of any independent investigation he conducted—for instance, ▮▮▮▮▮▮▮▮▮▮▮▮, or conducting a review of public-source databases for comparable licenses. Rather, Mr. Ratliff used the license because **LGE told him** it was the "closest technolog[y]" to the '941 Patent at issue. *Id.*[3]

C.  **Other Settlement Agreements**

In addition to the above settlement agreements, Mr. Ratliff's expert report makes repeated

---

[2] For purposes of this Motion Ancora assumes that the Levine patents are comparable, even though they plainly are not. *See* Ex. 13 (Main Report of Dr. David Martin) ¶ 41 (explaining the extensive differences between the Levine patents and the '941 Patent).

[3] Coincidentally, LGE's counsel of record in this case also represented LGE in the Levine dispute.

3

references to (and conducts various analyses of) two other settlement agreements, neither of which he incorporates into his damages calculations. The first is a settlement between Microsoft and Ancora (the "Microsoft Settlement"), *see* Ex. 10, that ███████████████████████████ ████████████████████████████████████████████████████ ███████████████████████████████ ██████████████ ████████████████████████████████ The second is a settlement between LGE and Garnet Digital LLC ████████████████████████████ Although Mr. Ratliff discusses the Garnet Settlement in several paragraphs of his report, he does not include it in any damages calculations, and does not even assert that it is useful as a "cross-check" on the final damages award. See Ex. 3 (Ratliff Rpt.) ¶ 53.

## II.  LEGAL STANDARD

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702, a court must exercise its "gatekeeping" responsibility to ensure that an expert's testimony rests on a reliable foundation. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141–42 (1999); *ProTradeNet, LLC v. Predictive Profiles, Inc.*, 2019 WL 6499488, at *2 (W.D. Tex. Oct. 11, 2019). Courts cannot admit expert testimony that is based on an unreliable foundation. *Seaman v. Seacor Marine L.L.C.*, 326 F. App'x 721, 724 (5th Cir. 2009). To that end, "unfounded assumptions that are not 'fully explored' or otherwise substantiated . . . render any expert opinion based thereon, 'mere guesswork.'" *United States v. Fresenius Med. Care N. Am.*, 2010 WL 11451582, at *6 (W.D. Tex. Mar. 31, 2010) (quoting *Seaman*, 326 F. App'x at 724).

## III.  ARGUMENT

### A.  Mr. Ratliff's Reliance on Licenses Hand-Picked by LGE is Unreliable.

Mr. Ratliff's opinions that rely on LGE's hand-picked settlement with Mr. Levine are

4

unreliable. Mr. Ratliff did not select the license: LGE did. Ex. 3 (Ratliff Rpt.) ¶ 52. He did not determine the criteria to be used for identifying relevant licenses: LGE did. *Id.* He did not perform, oversee, or double-check the process by which LGE identified the "closest" license to the '941 Patent: LGE did. *Id.* And he performed no verification of LGE's search results or criteria to ensure they constituted a sound method for identifying relevant licenses. *Id.* This is an egregious violation of FRE 702's requirement that opinions be "the product of reliable principles and methods."

An expert's opinion lacks such a reliable foundation when it is "based on conclusory statements of the expert's client, rather than on the expert's independent evaluation . . . ." *Supply & Bldg. Co. v. Estee Lauder Int'l, Inc.*, 2001 WL 1602976, at *4 (S.D.N.Y. Dec. 14, 2001). This is particularly so where, as here, the client fails to provide the opposing party "access to the underlying data and assumptions upon which the expert relied." *Lee Valley Tools, Ltd. v. Indus. Blade Co.*, 288 F.R.D. 254, 267 (W.D.N.Y. 2013).

The person responsible for choosing what LGE contends is the most "similar" license to the '941 Patent was ▇▇▇▇▇▇▇▇▇▇▇▇ LGE's 30(b)(6) witness for licensing—who explained that he used his own subjective criteria to decide what licenses LGE would produce to Ancora.[4] Specifically, at his deposition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
- ▇▇▇▇▇▇.

---

[4] Ancora's Interrogatory No. 7 asked LGE to identify "all licenses . . . related <u>in any way</u> to patents or other intellectual property rights that You contend are <u>comparable from a technology standpoint</u> to the Asserted Patent . . . ." Ex. 12 (LGE Jan. 8, 2021 Response to Ancora ROG 7) at 41.

███████████████████████████████. Ancora's counsel then asked whether and how LGE had completed its search for comparable licenses, as Ancora sought in its interrogatories. *See id.* at 130:18-132:14. In response, ████████ pointed to the Levine and Garnet agreements and explained:

███ ████ ██████_██_█████_██_██████████ █
████████████████████████████████████████
█████████████████████████
██████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████

████████████ Ancora's counsel then asked "why" LGE believed the Levine and Garnet agreements were comparable. In response, LGE's corporate designee explained:

████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████
███████████

Mr. Ratliff accepted *in toto* the search methodology of LGE's self-interested corporate representative without as much even conducting a simple spot check to verify its accuracy. *See* Ex. 3 (Ratcliffe Rpt.) ¶ 52. The problems with this approach are self-evident and incurable.

First, Mr. Ratliff relied entirely on <u>LGE alone</u> to conduct <u>its own search</u> for comparable licenses ████████████████████████████ using <u>its own criteria</u> to arrive at two agreements that <u>LGE</u> admitted █████████████████████████████████████ ███████████████████████████████████ Despite the obvious conflict of interest

6

of LGE's employee conducting his own unsupervised search, Mr. Ratliff made no attempt to assure himself that the licenses that LGE identified actually were the most technologically comparable.[5] He did not oversee or design LGE's search. He did not develop, review, or approve the criteria LGE used to search. And he conducted no quality assurance on its results. As a result, the search LGE conducted (and Mr. Ratliff relies on) is a black box—opaque to Mr. Ratliff and Ancora alike.

Mr. Ratliff's "methodology"—to the extent it can even be called "his"—stands in stark contrast to other experts who used their own rigorous methods to identify comparable agreements. For example, in *PerdiemCo, LLC v. Industrack LLC*, an expert survived a defendant's challenge to his "methodology on technical comparability." 2016 WL 6611488, at *4 (E.D. Tex. Nov. 9, 2016). The court explained that the methodology was "sufficiently disclosed and traceable" where the expert had (1) "obtained a group of third-party licenses by searching the RoyaltySource database for transactions that relate to" technology at issue; (2) arrived at a subset of "25 licenses"; (3) provided all 25 licenses to plaintiff's "technical expert"; and then (4) relied on the licenses the technical expert determined "cover[ed]" the relevant technology. *Id.* Similarly, in *bioMerieux, S.A. v. Hologic, Inc.*, the Court rejected a methodological challenge where the expert directly "evaluated multiple sources" of potentially comparable licenses, including "licenses covering [the relevant] technology executed by Defendants' predecessors" and "Defendants' internal documents describing licenses with other entities for products within the same 'intellectual property landscape.'" 2020 WL 327161, at *3 (D. Del. Jan. 21, 2020). Mr. Ratliff did nothing of the sort.

---

[5] In fact, ▮▮▮▮ invented criteria—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—are entirely irrelevant to whether they are **technologically** comparable to the '941 Patent, which is what Ancora sought by its Interrogatory. *See* Ex. 12 (Ancora ROG No. 7) at 41 (seeking licenses that were "comparable from a technology standpoint to the ['941] patent"); Ex. 6 ▮▮ 30(b)(6) Dep. Tr.) 131:9-10 (same). ▮▮

Even more problematic, however, is that Mr. Ratliff's methods are not susceptible to testing by cross-examination because Ancora lacks access to the "underlying data and assumptions upon which [Mr. Ratliff] relied." *Lee Valley Tools*, 288 F.R.D. at 267. Specifically, the <u>only</u> licenses Ancora has access to are the few that LGE (the fox in charge of the proverbial hen house) picked itself. And because the only criteria LGE used to determine technical comparability was his own subjective belief, *see* Ex. 6 ▇ 30(b)(6) Dep. Tr.) at 133:3-134:3, it is probable, if not certain, that LGE failed to identify and produce <u>far more relevant</u> licenses within its possession. Thus, because LGE produced none of the underlying data—▇▇▇▇▇▇▇▇▇▇▇▇ from which LGE unilaterally plucked the licenses—Ancora cannot examine Mr. Ratliff on any of the other potentially <u>more relevant</u> licenses he did not consider and LGE did not produce.

### B.      The Levine Settlement is Inadmissible Under FRE 403 and 408.

The Levine Settlement is independently inadmissible given the Federal Circuit's "longstanding disapproval of relying on settlement agreements to establish reasonable royalty damages" under Federal Rules of Evidence 403 and 408. *LaserDynamics*, 694 F.3d at 78. When such agreements are used to derive reasonable royalty sums, there is a heightened "risk of unfair prejudice, confusion of the issues, and misleading the jury." *Id.* Thus, for a settlement to be admissible, damages experts must "appropriately account[] for differences between the circumstances of that settlement and the present circumstances" such as "market conditions and the state of the earlier litigation when settled." *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1299-1300 (Fed. Cir. 2019).

Here, Mr. Ratliff performed <u>no</u> analysis of the "differences between the circumstances of that settlement and the present circumstances." *Id.* at 1299. Indeed, Mr. Ratliff barely acknowledges that the Levine Settlement is a litigation settlement <u>at all</u>—referring to it as a "patent agreement" and conducting no analysis of the litigation from which it resulted. *See* Ex. 3 (Ratliff

Rpt.) ¶¶ 55-58; *M2M Sols. LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678 (D. Del. 2016) (striking testimony on settlement license where expert "virtually ignore[d] the fact that these two licenses resulted from litigation settlements").

Mr. Ratliffe's failure to conduct any analysis is all the more striking here, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dr. Ratliff complete and utter failure to "offer[] [any] detail as to the litigation posture of [the parties'] at the time of settlement" requires its exclusion. *Baltimore Aircoil Co. v. SPX Cooling Techs. Inc.*, 2016 WL 4426681, at *24 (D. Md. Aug. 22, 2016), *aff'd*, 721 F. App'x 983 (Fed. Cir. 2018). "No amount of cross-examination can cure this defect." *Id.*

Because Mr. Ratliff's discussion of the Levine Settlement fails to analyze the economic differences of this allegedly comparable agreement, it is "unreliable, irrelevant, and unhelpful to the jury's task or evaluating the result of the hypothetical negotiation" and should be excluded. *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 794328, at *11 (N.D. Cal. Feb. 25, 2014).

### C. The Microsoft and Garnet Settlements are Similarly Inadmissible.

For the same reason, the Court should strike all references to the Microsoft and Garnet Settlements. 

██████████████. This admission ends the analysis; an expert's concession that a license is non-comparable precludes him from using it in his reasonable royalty analysis <u>in any way</u>. *See Intelligent Verification Sys., LLC v. Microsoft Corp.*, 2015 WL 1518099, at *5 (E.D. Va. Mar. 31, 2015) (precluding expert from relying on admittedly non-comparable license "to support the form of royalty," *e.g.*, lump sum vs. running royalty), *aff'd*, 628 F. App'x 767 (Fed. Cir. 2016). And even though Mr. Ratliff asserts that the agreement nonetheless is "informative as to an order of magnitude in contrast to Ancora's claims in this case," Ex. 3 (Ratliff Rpt.) ¶ 39, courts have rejected such arguments as "disingenuous and unpersuasive" and precluded experts from relying on non-comparable licenses as a mere "point of comparison." *Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2607882, at *3 n.1 (E.D. Tex. May 25, 2017).

As to the Garnet Settlement, although Mr. Ratliff <u>describes</u> the agreement in his report, *see* Ex. 3 (Ratliff Rpt.) ¶¶ 53-54, he does not incorporate it into his royalty analysis or opine that it is relevant in any way. For that reason alone, it should be excluded. *Pioneer Corp. v. Samsung SDI Co.*, 2008 WL 11344761, at *5-6 (E.D. Tex. Oct. 2, 2008) (excluding evidence of settlements on which the expert did not rely). It also must be excluded because Mr. Ratliff makes no showing of economic comparability between the Garnet Settlement and the hypothetical negotiation. *Biscotti*, 2017 WL 2607882, at *3 ("[W]hen relying on past licenses to support an opinion regarding a reasonable royalty . . . , a damages expert must opine on both the technological and economic comparability of such past licenses.").

## IV.   CONCLUSION

The Court should strike from Mr. Ratliff's report (and preclude Mr. Ratliff from testifying about): (1) all references to and calculations derived from the Levine Settlement (Ex. 3 ¶¶ 55-58, 61, 107, 161; StoneTurn Exhibits 1, 1.1, 2.1, 2.2, 5.3; StoneTurn Workpaper 10); and (2) all references to the Microsoft and Garnet litigations and Settlements (*id.* ¶¶ 14, 37-39, 53-54).

Date: March 31, 2021

/s/ *Steven M. Seigel*
Charles Ainsworth
State Bar No. 00783521
Robert Christopher Bunt
State Bar No. 00787165
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
903/531-3535
charley@pbatyler.com
rcbunt@pbatyler.com

Lexie G. White (Texas 24048876)
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
lwhite@susmangodfrey.com

Andres Healy (*pro hac vice*)
Steven M. Seigel (*pro hac vice*)
Nicholas S. Crown (*pro hac vice*)
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Tel: (206) 516-3880
Fax: 206-516-3883
ahealy@susmangodfrey.com
sseigel@susmangodfrey.com
ncrown@susmangodfrey.com

Zachary B. Savage (*pro hac vice*)
SUSMAN GODFREY LLP
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
zsavage@susmangodfrey.com

**COUNSEL FOR PLAINTIFF ANCORA TECHNOLOGIES, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being notified of the filing of this document via the Court's CM/ECF system per Local Rule CV-5(b)(1). I also hereby certify that LGE's counsel of record are being served with a copy of the foregoing document via electronic mail on this 31st day of March, 2021.

*/s/ Steven M. Seigel*
Steven M. Seigel

**CERTIFICATE OF CONFERENCE**

I certify that on March 26, 2021, counsel for Ancora conferred with counsel for LGE concerning the relief sought in this motion, and was advised that counsel for LGE opposed.

*/s/ Steven M. Seigel*
Steven M. Seigel